IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MICHELLE BRUSO,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND<br>ORDER AFFIRMING ALJ'S DECISION<br><br><br>1:14-CV-00156 EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Michelle Bruso filed this action asking the Court[1] to reverse or otherwise remand the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits. The ALJ determined that Ms. Bruso did not qualify as disabled under 42 U.S.C. §§ 416(i), 423(d). (Administrative R. ("R.") 22, ECF No. 8.) Having carefully considered the parties' memoranda, oral arguments, relevant legal authorities, and the complete record in this matter, the Court AFFIRMS the ALJ's decision.

## PROCEDURAL HISTORY

On February 6, 2011, Ms. Bruso protectively filed for disability insurance benefits, with a disability onset date of June 30, 2010. (R. 11.) Ms. Bruso alleged carpal tunnel syndrome, ulnar nerve entrapment, nerve damage, mixed spasmodic dysphonia, and degenerative disk disease limited her ability to work. (R. 13.) On June 30, 2011, the Social Security Administration ("SSA") denied Ms. Bruso's initial disability benefits application. (R. 95–98.)

---

[1] In accordance with United States District Court for the District of Utah General Order 07-001, and Fed. R. Civ. P. 73, the parties consented to the jurisdiction of a Magistrate Judge. (ECF No. 15.)

Thereafter, Ms. Bruso filed a request for reconsideration, which the SSA denied on October 26, 2011. (R. 100–102.)

Ms. Bruso subsequently requested a hearing before an ALJ, which took place on March 13, 2013. (R. 25.) Ms. Bruso appeared and testified at the hearing, alongside Kent Granat, an impartial vocational expert. (R. 11.) The ALJ concluded that Ms. Bruso did not qualify as disabled under the Social Security Act because a significant number of jobs remain available to Ms. Bruso. (R. 21–22.) Ms. Bruso then requested review from the Appeals Council, who denied her request for review (R. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the record as a whole contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 1383(c)(3); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ's findings shall stand if supported by substantial evidence. 42 U.S.C. § 1383(c)(3). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will

be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).  Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).

In addition to a lack of substantial evidence, the Court may reverse where the ALJ uses the wrong legal standards or the ALJ fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Ms. Bruso argues the ALJ:  (1) erred in determining Ms. Bruso did not meet or equal a listing, (2) improperly rejected the opinions of Ms. Bruso's medical providers, (3) improperly rejected Ms. Bruso's subjective complaints, and (4) failed to determine Ms. Bruso's Residual Functional Capacity ("RFC") properly.  Because a substantial portion of Ms. Bruso's claim depends on the outcome of her second and third arguments, the Court examines those issues first.

## I.      The ALJ Properly Evaluated the Medical Opinions

Ms. Bruso argues the ALJ improperly rejected the opinions of her treating medical providers, specifically the opinions of Dr. Hess and Dr. Bradley.  (Opening Br. 8–9, ECF No. 18.)  In 2011, Dr. Hess and Dr. Bradley each signed nearly identical letters asserting Ms. Bruso met the criteria of listings 2.09 and 1.02(B).  (R. 293, 295.)  In 2012, Dr. Bradley noted that Ms.

Bruso had throat strain that frequently interfered with her attention and concentration.  (R. 388, 391.)  In 2013, Dr. Hess opined that Ms. Bruso could rarely lift less than ten pounds and could only perform grasping motions, finger manipulation, and overhead reaching for fifty percent of an eight-hour work day.  (R. 378–80.)  The Commissioner responds to Ms. Bruso by arguing that the ALJ gave proper weight to the opinions of Dr. Hess and Dr. Bradley in light of the record as a whole.  (Def.'s Answer Br. 12–15, ECF No. 27.)  The Court agrees with the Commissioner.

An ALJ must evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  If the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record," then the ALJ must give the opinion controlling weight.  20 C.F.R. § 404.1527(c)(2).  However, the ALJ may give less weight to or outright reject a medical opinion if the ALJ provides "specific, legitimate reasons" for doing so.  Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)).  When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider certain factors.  These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which relevant evidence supports the physician's opinion; (4) the consistency between the opinion and the record as a whole; (5) whether the physician specializes in the area upon which she renders an opinion; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  The ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions.  See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir.

2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review).

Here, the ALJ gave specific reasons for assigning less weight to certain medical opinions of Dr. Hess and Dr. Bradley.  Regarding the nearly identical letters from 2011, the ALJ noted that the "letter[s] [were] neither composed by [Ms. Bruso's] treating medical providers nor supported by their own treatment notes" and that Ms. Bruso's representative had drafted them. (R. 19.)  Further, the ALJ listed specific areas in the record that contradicted the assertions in the 2011 letters.  (R. 19–20.)  For example, the ALJ relied on Dr. Bradley's statement that Ms. Bruso could "'work full-time' as long as the job did not require her to be speaking throughout the day," as well as his statement that Ms. Bruso's voice lasts for "approximately 3 hours" before wearing out.  (R. 19, 285.)

The ALJ examined many other areas of the record that contradicted the 2011 letters from Dr. Hess and Dr. Bradley.  The ALJ considered the medical opinion of Dr. Lewis Barton, a state medical consultant, who opined that Ms. Bruso could perform "medium work that required no more than frequent handling or fingering with the right hand" and that her voice "fatigued easily."  (R. 19, 68–77.)  The ALJ also examined the opinion of Dr. Dennis Taggart, another state medical consultant, who determined Ms. Bruso "was appropriately restricted to light work, with no more than occasional use of her right hand."  (R. 19, 78–91.)  In examining these medical opinions, the ALJ granted them "probative weight" in light of "the totality of [the] medical evidence."  (R. 19.)  After examining the record as a whole, the ALJ decided to give certain extreme limitations from Dr. Hess and Dr. Bradley less weight based on substantial evidence.

Further, the ALJ noted Dr. Bradley's 2012 statement that "he could 'only comment on voice problems in relation to disability.'" (R. 20, 387–391.)  Thus Dr. Bradley's own opinion supports the ALJ's giving less weight to Dr. Bradley's earlier assertions regarding the impacts of Ms. Bruso's carpel tunnel syndrome.  The RFC bears this weighing out given its limitation that Ms. Bruso can speak "no more than one third of the workday," which follows Dr. Bradley's opinion that Ms. Bruso's voice "lasts for approximately 3 hours before it wears out." (R. 17, 285.)

Ms. Bruso also argues that the ALJ improperly "rejected" Dr. Hess's 2013 opinion that Ms. Bruso "could rarely lift less than ten pounds and was limited to using her arms, hands, and fingers to 50 percent of the day."  (Opening Br. 9–10, ECF No. 18.)  However, this argument does not accurately reflect the ALJ's determination.  The ALJ specifically assigned weight to Dr. Hess's opinion "to the extent that the claimant was restricted to lifting and carrying no more than 10 pounds occasionally, less than 10 pounds frequently, and using her arms, hand, and fingers no more than frequently."  (R. 20; *See* SSR 83-10, 1983 WL 31251, *5-6 (Jan 1, 1983) (stating that frequently "means occurring from one-third to two-thirds of the time[,]" and that occasionally "means occurring from very little up to one-third of the time."))

Contrary to Ms. Bruso's assertion, the opinions of Dr. Hess and Dr. Bradley outside of the 2011 letters generally coincide with the RFC, including a finding that Ms. Bruso can only perform "sedentary work," can "no more than frequently" utilize her hands and fingers, can "no more than occasionally" speak or interact with co-workers, can "never [interact] with the general public," and can have "no more than moderate exposure to noisy environments."  (R. 17.) Accordingly, the Court finds the ALJ evaluated the opinions of Ms. Bruso's treating medical

providers in accordance with the law and that substantial evidence in the record supports the weights she assigned.

## II.    The ALJ Properly Discredited Ms. Bruso's Subjective Complaints

Ms. Bruso asserts that the ALJ improperly rejected her subjective complaints. Particularly, Ms. Bruso claims the ALJ improperly found  "(1) her statements were inconsistent with the medical record; (2) her statements were inconsistent with her daily activities; and (3) Botox treatment controlled her symptoms of dysphonia."  (Opening Br. 13, ECF No. 18.)  The Commissioner responds the ALJ provided valid reasons to find Ms. Bruso's subjective complaints not fully credible.  (Def.'s Answer Br. 18, ECF No. 27.)  The Court agrees with the Commissioner and finds no error in the ALJ's credibility analysis.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions.  *Id.*  To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted).  But this analysis "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ examined several instances in the record suggesting that Ms. Bruso's subjective complaints conflicted with the evidence.  (R. 17–19.)  Although Ms. Bruso alleged she had "brain fogs" and blurriness associated with her dysphonia (R. 190), the ALJ noted that Ms. Bruso "declined to report these symptoms to her treating medical providers."   (R. 18.)  Additionally, Ms. Bruso claimed that she needed Botox injections every three weeks and that each injection would only allow her to speak for "a couple of weeks" after each shot.  (R. 185.)  However, the ALJ noted Ms. Bruso's progress documentation reported she received "Botox for her dysphonia only a couple time[s] a year, with her voice doing well for several months at a time."  (R. 18, 392, 408.)  Moreover, the ALJ observed Ms. Bruso testify at the hearing "extensively with clear, easily understood speech."  (R. 16.)

When Ms. Bruso claimed she had limited "ability to sit or stand for any length of time to complete a task," the ALJ noted that Ms. Bruso "fed and cared for her pets, prepared meals, did laundry, and drove a car[,]" citing the function report Ms. Bruso completed.  (R. 17–18, 186–188.)  Ms. Bruso argues that the ALJ "ignored the fact that [she] has much help from her family in doing simple tasks[.]"  (Opening Br. 15–16, ECF No. 18.)  These tasks formed only one aspect of the ALJ's evaluation and clearly include Ms. Bruso's representations about help from the family.  (R. 186–188.)  Hence, the ALJ considered the help and made a determination supported by substantial evidence in the record.  The ALJ also saw Ms. Bruso's infrequent visits to her

hand doctor, Dr. Hess, as indicative of "few complaints or problems." (R. 18, 296–309, 398–402.) In considering all of this evidence, the ALJ explicitly discussed three of the factors to consider in determining a claimant's credibility—frequency of medical contacts, nature of daily activities, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *See Kepler,* 68 F.3d at 391. The ALJ supported her analysis with citation to the record. The Court finds the ALJ provided sufficient analysis and substantial evidence to support her credibility determination regarding Ms. Bruso's subjective complaints.

### III.  The ALJ Properly Determined Ms. Bruso did not Meet or Equal a Listing

Ms. Bruso contends the ALJ improperly determined she failed to meet or equal a listing. In support, Ms. Bruso cites the opinions of Dr. Hess and Dr. Bradley, particularly their nearly identical letters from 2011 stating Ms. Bruso met the qualifications for listings 2.09 and 1.02(B). (Opening Br. 8, ECF No. 18.) In response, the Commissioner argues that the letters lacked record support and merely asserted conclusions and that Ms. Bruso offered no additional evidence to meet her burden to prove her limitations met or equaled a listing. (Def.'s Answer Br. 10, ECF No. 27.) The Court agrees with the Commissioner.

Step three of the sequential evaluation process "asks whether any medically severe impairment, alone or in combination with other impairments," meets or equals "any of a number of listed impairments so severe as to preclude substantial gainful employment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (internal quotation marks and citations omitted). If the claimant's impairment(s) meets or equals the listing, the ALJ must find the impairment conclusively disabling. *See* 20 C.F.R. § 404.1520(d).

Ms. Bruso alleges she qualifies for listings 2.09 and 1.02(B).  As previously discussed, the ALJ reasonably discredited the 2011 letters from Dr. Hess and Dr. Bradley.  Thus the opinions in those letters do not control the listing determination.

### A.  Listing 2.09

To satisfy listing 2.09, Ms. Bruso must show that she has "[l]oss of speech due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained."  20 C.F.R. § 404, Subpt. P, App. 1, Listing 2.09.  However, the ALJ identified several instances in the record indicating Ms. Bruso could make herself heard and understood on a sustained basis.  Ms. Bruso testified at the ALJ hearing with "clear, easily understood speech." (R. 16.)  Dr. Bradley noted that with Botox treatment, Ms. Bruso could "talk about three hours" before her voice would wear out.  (R. 16, 284.)  Ms. Siciliano, a speech specialist, reported that Ms. Bruso could speak in short sentences.  (R. 17, 394.)  While the ALJ found that the totality of the record suggests Ms. Bruso has significant issues with speaking, she also found that the record provided insufficient evidence to support Ms. Bruso's claim that she cannot make herself heard or understood.

At oral argument, Ms. Bruso further argued that she qualifies for listing 2.09 because her Botox injections cause her voice to fall to a whisper for one to two weeks following the injections.  (*See* R. 392 (regarding a one to two week recovery following Botox three to five times a year.))  Ms. Bruso contends these recovery periods demonstrate an inability to have "sustained" speech under listing 2.09 because they make her voice less consistent and sustainable in the context of an entire year.   The Court relies in part on SSR 82-57, 1982 WL 31382 (Jan 1, 1982), in finding this argument unpersuasive.  SSR 82-57 uses the word "sustained" to refer to a

claimant's rate of speech in a given moment rather than a claimant's voice trends over a year. SSR 82-57 at *1.  SSR 82-57 counsels the evaluator to consider "[t]he rate of speech and the degree of ease with which the individual's speech flows[.]"  SSR 82-57 at *2.  The ruling further defines this factor as "how long he or she is able to sustain consecutive speech; the number of words spoken without interruption or hesitancy;" and "whether he or she appears fatigued, and if so, after how long."  SSR 82-57 at *2.  Given these factors, the ALJ did not err as a matter of law in evaluating the impact of Ms. Bruso's voice fluctuations over time and determining she did not meet this listing.  In light of the ALJ's findings and the Court's previous analysis, the Court concludes that the ALJ's determination remains supported by substantial evidence in the record.

### B.  Listing 1.02

Ms. Bruso also argues that she qualifies for listing 1.02(B).  To satisfy listing 1.02(B), Ms. Bruso must show she has:

> Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: . . .

> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02.  The regulations explain:

> examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

11

20 C.F.R. § 404, Subpt. P, App. 1, 1.00(B)(2)(c).

Given this definition, the ALJ identified several places in the record that contradict Ms. Bruso's assertion that her carpel tunnel syndrome meets this listing.  The ALJ noted that in 2010 Ms. Bruso reported that she had "full motion of the wrist."  (R. 16, 296.)  In a 2011 check-up, Ms. Bruso demonstrated "5/5" motor strength and normal nerve conduction studies.  (R. 16, 302–03.)  Further, Ms. Bruso went a year without complaining to Dr. Hess about her carpel tunnel syndrome and even drove her car to the hearing before the ALJ.  (R. 16; *c.f.* R. 303, 398.)  Accordingly, the Court finds that the ALJ did not err in determining that Ms. Bruso did not meet or equal a listing.

## IV.   The ALJ Determined Ms. Bruso's RFC Properly.

Lastly, Ms. Bruso argues the ALJ failed to incorporate the suggestions of Ms. Siciliano, Dr. Hess, and Dr. Bradley into the hypothetical the ALJ put to the vocational expert and the RFC.  (Opening Br. 17–18, ECF No. 18.)  In reviewing the argument, Ms. Bruso can only prevail on a step five error in the hypothetical if the ALJ incorrectly omitted limitations from the RFC because the ALJ's hypothetical fully encompassed the ALJ's RFC.  (R. 17, 51-55.)  Thus, Ms. Bruso really contends the ALJ incorrectly determined the RFC.  In response, the Commissioner contends the ALJ properly determined Ms. Bruso's RFC based on substantial evidence from the record as a whole.  (Def.'s Answer Br. 19, ECF No. 27.)

A claimant's RFC reflects the claimant's ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments.  *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993); 20 C.F.R. § 404.1545.

In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013); 20 C.F.R. § 404.1545(a)(2). The ALJ must explain how both the medical and nonmedical evidence support her RFC findings. *Wells,* 727 F.3d at 1069.

As previously discussed, substantial evidence in the record supports the ALJ's evaluation of Dr. Hess's and Dr. Bradley's opinions and the ALJ's credibility determination regarding Ms. Bruso's subjective complaints. Therefore, the ALJ did not err in failing to incorporate limitations asserted by Dr. Hess, Dr. Bradley, or Ms. Bruso. The only remaining argument concerns whether the ALJ properly incorporated the statements of Ms. Siciliano into the RFC. The Court finds she did.

Ms. Bruso argues the ALJ did not incorporate many of the suggestions from Ms. Siciliano into the RFC, including her statements that "Ms. Bruso could not talk for longer than fifteen minutes; each Botox injection would cause Ms. Bruso's voice to be a whisper for two weeks; and her voice symptoms would interfere *constantly* with concentration and attention." (Opening Br. 18, ECF No. 18.) However, this argument does not reflect the ALJ's actual determination.

The ALJ noted Ms. Siciliano's opinion that Ms. Bruso "could speak to people directly with a strained and uneven voice," could not speak continuously for eight hours, and "'did well' for several months at a time after Botox." (R. 17, 290, 336, 338, 392.) The ALJ specifically noted that she gave "great weight" to Ms. Siciliano's statements and that she "incorporated [them] into the claimant's residual functional capacity." (R. 19.) According great weight to an opinion, unlike controlling weight, does not require the ALJ to adopt the opinion completely.

13

*See McDonald v. Barnhart*, 358 F. Supp. 2d 1034, 1040 (D. Kan. 2005) (rejecting argument that "ALJ should have adopted the 'ultimate' opinions" of treating physicians); SSR 96-2P, 1996 WL 374188, *2 (July 2, 1996) (requiring adoption of treating physician opinion only when it receives controlling weight). Thus the ALJ could incorporate those portions of Ms. Siciliano's opinion she found supported by the record evidence. *See* 20 C.F.R. § 404.1545(a)(3).

Many different parts of the RFC incorporate Ms. Siciliano's recommendations. The RFC states that Ms. Bruso has the capacity to speak "no more than occasionally," interact with co-workers and supervisors "no more than occasionally," "never [interact] with the general public," and can have "no more than moderate exposure to noisy environments." (R. 17.) This RFC suggests that the ALJ decided on limitations she found could accommodate for fluctuations in Ms. Bruso's voice throughout the day and over the course of a year. The ALJ's hypothetical to the vocational expert reveals the ALJ's thinking in part: The ALJ gave an example of an individual who "is very difficult to hear, so if she's working in [a] very loud or loud environment, she could not be understood." (R. 52.)

Although Ms. Bruso's voice may sound somewhat strained and inconsistent, the Court will not second guess an ALJ's determination if substantial evidence supports it. The record shows that Ms. Siciliano's suggestions directly influenced the ALJ's hypothetical and RFC determination. As to Ms. Siciliano's opinion regarding concentration, the ALJ explained she found the record evidence did not support "brain fogs" or "blurriness" because Ms. Bruso never reported these symptoms to her medical providers. (R. 18.) The record evidence regarding Ms. Bruso's voice, including Ms. Siciliano's opinion, support the ALJ's RFC finding. Accordingly,

the Court finds that the ALJ supported her RFC finding with substantial evidence from the record.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision in this case.

DATED this _30th___ day of March, 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge

15